IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-386 |
| MATTHEW ALAN LAISS | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Mark B. Dubnoff, Assistant United States Attorney for the District, hereby opposes defendant Matthew Laiss's motion to dismiss the indictment, pursuant to a grant of presidential pardon. ECF No. 18.

In a memorandum supporting his motion, Laiss claims that on November 7, 2025, when President Trump issued a "full, complete, and unconditional pardon to all United States citizens for conduct relating to support, voting, … or advocacy for or of any slate or proposed slate of Presidential electors … in connection with the 2020 Presidential Election, …" the President was pardoning Laiss. Mem. at 3-4. Laiss is mistaken.

The President's November 7 pardon was a grant of clemency for people whose stated purpose was to expose and rectify fraud in the counting of votes in the 2020 election by presenting to Congress alternate slates of electors in states where those individuals believed such fraud may have occurred. It was not a grant of clemency for people like Laiss who are accused of actually committing fraud in the 2020 election. To the extent Laiss disagrees, he can appeal to the Office of the Pardon Attorney, not the Courts, although as explained below, the Office of the Pardon Attorney does not believe the November 7 pardon applies to Laiss.

I.     **Background**

    A.     **The Indictment.**

On September 5, 2025, the government unsealed a two-count indictment against Laiss, which charged him with one count of voter fraud, in violation of 52 U.S.C. § 20511(2) (Count One), and one count of voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e) (Count Two).

Count One alleged that on October 31, 2020, Laiss submitted a mail-in ballot for the 2020 Pennsylvania election when Laiss knew that he was no longer a Pennsylvania resident and was, therefore, ineligible to vote in Pennsylvania. More specifically, Count One alleged that in August 2020, Laiss moved from Pennsylvania to Florida, obtained a Florida driver's license, and registered to vote at his new Florida residence. Despite this, Laiss allegedly completed a Pennsylvania mail-in ballot, which had been sent to his former Pennsylvania address, and mailed that ballot back to Pennsylvania with the intent that his vote would be counted in a Pennsylvania election where federal candidates were on the ballot. Count One further alleged that before Laiss mailed his ballot back to Pennsylvania, he falsely declared on the envelope containing his ballot that he was qualified to vote from his former Pennsylvania address. In so doing, Laiss allegedly deprived, defrauded, and attempted to deprive and defraud the residents of Pennsylvania of a fair and impartially conducted election process.

Count Two alleged that Laiss knowingly and willfully cast more than one vote for the offices of President and Vice President in the 2020 general election. Specially, Count Two alleged that Laiss voted once for President and Vice President when he submitted his mail-in ballot to Pennsylvania election officials on October 31, 2020, and then voted for President and

Vice President again when he showed up at the polls near Frostproof, Florida, on November 3, 2020, and voted there.

### B. The Elements of the Charges.

To convict the defendant on Count One, alleging voter fraud in violation of 52 U.S.C. § 20511(2)(B), the government must prove the following three elements beyond a reasonable doubt:

(1) That there was an election for federal office;

(2) That the defendant deprived, defrauded, or attempted to deprive or defraud the residents of a state of a fair and impartially conducted election process by the procurement, casting, or tabulation of ballots that were known by him to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held; and

(3) The defendant acted knowingly and willfully.

52 U.S.C. § 20511(2)(B).

To convict the defendant on Count Two, alleging voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e), the government must prove the following elements beyond a reasonable doubt: "1) a candidate for federal office must be on the ballot; 2) the defendant must vote more than once for a candidate; and 3) the defendant must so vote knowingly, willfully and expressly for the purpose of having her vote count more than once." *United States v. Salisbury*, 983 F.2d 1369, 1377 (6th Cir. 1993) (citing *United States v. Hogue*, 812 F.2d 1568, 1576 (11th Cir. 1987)).

## II.   The President's November 7 Pardon Proclamation

On November 7, 2025, President Trump issued a proclamation entitled, "Granting Pardons for Certain Offenses Related to the 2020 Presidential Election. The preface to the pardon states, "This proclamation ends a grave national injustice perpetrated upon the American

people following the 2020 Presidential Election and continues the process of national reconciliation." The President in this document granted a "full, complete, and unconditional pardon to all United States citizens for conduct relating to the advice, creation, organization, execution, submission, support, voting, activities, participation in, or advocacy for or of any slate or proposed slate of Presidential electors, whether or not recognized by any State or State official, in connection with the 2020 Presidential Election, as well for any conduct relating to their efforts to expose voting fraud and vulnerabilities in the 2020 Presidential Election." *Id.* at 1.

The proclamation stated that the people being pardoned included, but were not limited to, a list of 77 individuals, *id.* at 1-4, and directed the Attorney General, acting through the Pardon Attorney, to administer and effectuate the issuance of certificates of pardon to eligible applicants. *Id.* at 4. Laiss was not among the 77 listed individuals.

### III.    Argument

Article II of the Constitution provides the President with the "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1. A presidential pardon is "an act of grace" that "exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed." *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833); *Castillo v. U.S. Atty. Gen.*, 756 F.3d 1268, 1274 (11th Cir. 2014) ("a pardon 'releases the offender from all disabilities imposed by the offence'").

"The Constitution places few restrictions on the Executive's pardon power." *Andrews v. Warden*, 958 F.3d 1072, 1076 (11th Cir. 2020). "It empowers the President to pardon only 'Offences against the United States' and constrains the President from exercising the power 'in Cases of Impeachment.'" *Id.* (citing U.S. Const. art. II § 2, cl. 1.). "Otherwise, the President

possesses a broad power to forgive the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions." *Id.* (internal quotation marks omitted) (citing *Schick v. Reed*, 419 U.S. 256, 266 (1974)). "So long as the President does not use the power to pardon to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise." *Id.* (citations omitted). *See also Rosemond v. Hudgins*, 92 F.4th 518, 525 (4th Cir. 2024) ("The President's authority to grant clemency is 'unlimited,' save for the limits imposed by the Constitution, 'extend[ing] to every offence known to the law, and may be exercised at any time after its commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment.'") (citing *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380, (1866), and *United States v. Klein*, 80 U.S. (13 Wall.) 128, 147, 20 L.Ed. 519 (1871)).

"The Constitution also vests in the Executive the power to execute the laws." *Andrews v. Warden*, 958 F.3d at 1077 (citing U.S. Const. art. II § 1, cl. 1; *id.* § 3; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952)). "The President has long relied on executive officers to administer pardons." *Id.* "Ordinarily, the President relies on the Department of Justice—specifically, the Attorney General and Office of the Pardon Attorney—to administer the pardon process." *Id.* at 1078 (citations omitted). Indeed, in his November 7, 2025, Pardon Proclamation, President Trump empowered the Attorney General, acting through the Pardon Attorney, to "administer and effectuate the issuance of certificates of pardon to eligible applicants." *See* November 7 Pardon Proclamation, attached as Exhibit A to the defendant's Motion to Dismiss, at p. 4.

"The Supreme Court has ruled that deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering," including in the

context of a pardon. *Andrews*, 958 F.3d at 1078 (citing *Udall v. Tallman*, 380 U.S. 1, 4, 16-18, (1965)). If the agency's "interpretation is not unreasonable" and "the language of the order[ ] bears [its] construction," "courts must ... respect it." *Andrews*, 958 F.3d at 1078 (quoting *Udall*, 380 U.S. at 4, 18).

In Laiss's motion to dismiss, he does not assert that President Trump's November 7 pardon proclamation violated the Constitution or was otherwise an illegitimate exercise of Presidential power. To the contrary, Laiss claims that the pardon proclamation was both legitimate and applied to him. Specifically, Laiss argues that the pardon applies to him because it addresses "conduct relating to support, voting, … or advocacy for" a slate of Presidential electors in connection with the 2020 Presidential Election, and Laiss was indicted for casting two votes in the 2020 Presidential Election, which was effectively voting for a "slate of Presidential electors." Mem. at 4, n.4 (citations omitted).[1]  Laiss also asserts that it would be "unequivocal[ly] absurd[]" for President Trump to have pardoned attorneys and advisors "who allegedly conspired to cause then-Vice President Pence to unilaterally block the certification of then-candidate Biden's election victory" without pardoning Laiss. Mem. at 4. Laiss argues that reading President Trump's pardon proclamation to intend such an outcome "would be outrageous, particularly in light of its sweeping language." *Id.*

---

[1] Laiss claims he voted twice for President Trump, which of course is unverifiable since he cast secret ballots in both Pennsylvania and Florida. The claim is also legally irrelevant, since 52 U.S.C.§ 10307(e) prohibits voting more than once in any federal election, regardless of the identity of the federal candidate. Defense counsel knows this and even asked government counsel for an agreement to exclude all references at trial to Laiss's claim that he had voted twice for President Trump. Government counsel naturally agreed. In fact, the parties have also agreed to redact all references to Laiss's political party affiliation from the trial exhibits, because such information is irrelevant to any of the issues in this case.

Laiss's presentation is entirely incorrect. First and foremost, if Laiss believes that President Trump's November 7 pardon proclamation applies to him, his recourse is to petition the Office of the Pardon Attorney for a certificate of pardon. *See* November 7 Pardon Proclamation at p. 4. Laiss cannot petition this Court to circumvent the executive agency tasked with issuing pardons and effectively issue a judicial pardon. Nor is there any legal authority supporting Laiss's demand that this Court "require the government to obtain explicit confirmation from the Office of the Pardon Attorney." *Id.*

That said, the government has consulted with the Office of the Pardon Attorney about Laiss's motion and can "explicitly confirm" that, in the view of the executive branch, Laiss is not covered by President Trump's November 7 pardon proclamation. In other words, it is this office's understanding that if Laiss were to appeal directly to the Office of the Pardon Attorney for a pardon based on November 7 pardon proclamation, that petition would be denied. Laiss could then come to this Court and try to overcome the high deference that courts afford the Office of the Pardon Attorney's interpretation of presidential pardons. Laiss would have to prove that the office's interpretation of the November 7 order was unreasonable. He could not meet that burden.

The plain language of President Trump's November 7 pardon proclamation makes this clear. The title of the proclamation proclaims a pardon of "certain offenses related to the 2020 presidential election." On its face, the pardon does not apply to every federal offense related to that election, only "certain offenses."

The pardon proceeds to declare that the President is acting to "end[] a grave injustice perpetrated upon the American people *following* the 2020 Presidential Election" (emphasis added). At the very outset, the pardon focuses on the very well-known dispute that occurred in

the counting of votes *following* the election, when President Trump and others maintained that fraudulent counting of votes led to the declaration of his opponent's victory in numerous states. In the course of that dispute, individuals created alternate slates of electors supporting the Republican candidates that they wished to submit to Congress on behalf of those states. This pardon plainly is not aimed at offenses committed *during* the election itself.

The pardon then repeats that its beneficiaries are those who engaged in "conduct relating to their efforts to *expose* voting fraud and vulnerabilities in the 2020 Presidential Election" (emphasis added). It twists this document beyond recognition to suggest that it benefits persons who *committed fraud* in the election.

In short, the pardon was not intended to protect people like Laiss, who is accused of actually committing voting fraud by: (a) falsely and fraudulently representing that he resided in a state where he did not live in order to cast a vote for President and Vice President in that state; and (b) voting more than once for the offices of President and Vice President. It is apparent why, as the Pardon Attorney has advised this office, he will not issue a certificate of pardon for an offender such as Laiss who committed fraud in the 2020 election.

A court recently explained:

> Enforcement of a commutation order is governed by its text. *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020) ("The text of President Obama's commutation order governs our review."); *see also United States v. Wilson*, 2025 WL 1009047, at *3 (D.D.C. Mar. 13, 2025) ("Because the text of the pardon governs a court's review, courts use ordinary tools of statutory interpretation to determine the meaning of a pardon.") (quotation marks and brackets omitted).

*United States v. Galanis*, 2025 WL 1649682, at *2 (S.D.N.Y. June 11, 2025).

Here, numerous conventions of statutory interpretation favor the Pardon Attorney's conclusion. First, the plain meaning of the words employed controls. "No single argument has more weight in statutory interpretation than this." *Browder v. United States*, 312 U.S. 335, 338

(1941). The intent of the drafter is also important, *see, e.g.*, *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001), and here, the focus of the President could not be clearer. And of course, an enactment should not be interpreted to produce an absurd result. *See, e.g., Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). It would indeed be absurd to interpret the action of a President avowedly focused on addressing fraud in the counting of votes to exonerate those who committed fraud in the actual voting.[2]

The principle of ejusdem generis – that "a general or collective term' at the end of a list of specific items is typically controlled and defined by reference to the specific classes . . . that precede it," *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (citations and quotation marks omitted) – is also informative. The list of 77 people named in the pardon almost exclusively includes those who presented themselves as alternate electors, and attorneys and other aides who supported the alternate elector effort. There is no one on the list who engaged in any alleged fraud in the voting itself, such as Laiss, or any remotely comparable conduct.

---

[2] Indeed, on the same day that the President issued the proclamation, Pardon Attorney Ed Martin issued a 15-page, single-spaced explanation of the action, which he described as the "Comprehensive Pardons for Contingent Electors and Affiliates." https://www.scribd.com/document/946369792/Mr-Ed-Martin-s-Statement-on-Alternative-Elector-Pardon at 3. Pardon Attorney Ed Martin described in detail the allegations of fraud in the voting and vote count in the 2020 election, and the actions taken by those the pardon aimed to benefit, who formed and presented alternate slates of electors in order to rectify abuses. The statement also described the actions that were taken against the contingent electors in numerous states. *Id.* at 10-14. He concluded, "A pardon recognizing the complete exoneration of the contingent electors and all who have been swept into this unjust vendetta against President Trump is appropriate and fully serves the interests of justice." *Id.* at 15. Again, it is clear that the pardon does not benefit a person who did commit fraud by voting twice in the election. To the contrary, the President has called on multiple occasions for further investigation and prosecution of those who committed fraud in the election. *See, e.g.*, "Trump escalates demands for 2020 election investigations and prosecutions," Washington Post, Oct. 26, 2025.

To the extent Laiss disagrees and somehow believes that the government's interpretation would lead to "unequivocally absurd" results, he can petition President Trump to issue a new pardon. Laiss cannot ask this Court to effectively issue its own pardon or modify the President's pardon. *Rosemond*, 92 F.4th at 525 ("The President's clemency power is not only expansive, but also exclusive. Neither the legislative nor the judicial branches can exercise or alter it.") (citing *Schick*, 419 U.S. at 266).

In sum, President Trump's November 7, 2025 Pardon Proclamation does not apply to Laiss or his conduct, and he has not received a pardon. His motion to dismiss the indictment should be denied.

        Respectfully submitted,

        DAVID METCALF
        United States Attorney


        */s/ Mark B. Dubnoff*
        MARK B. DUBNOFF
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by email and the Court's ECF electronic court filing system upon:

Katrina Young, Esq., and<br>
Elizabeth Toplin, Esq,<br>
Counsel for the Defendant

                                  */s/ Mark B. Dubnoff*
                                  MARK B. DUBNOFF
                                  Assistant United States Attorney

Date: November 28, 2025.