**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      :

           v.                :           **CRIMINAL NO. 25-386**

MATTHEW ALAN LAISS        :

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS FOR
JUDGMENT OF ACQUITTAL AND/OR FOR A NEW TRIAL**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Mark B. Dubnoff, Assistant United States Attorney for the District, hereby opposes defendant Matthew Laiss's post-trial motions for judgment of acquittal and/or for a new trial, pursuant to Fed. R. Crim. P. 29 and 33.

In Laiss's motions, which he combines in a single filing (ECF No. 74), Laiss makes three principal arguments. First, he claims that he is entitled to a judgement of acquittal on both Count One (voter fraud) and Count Two (voting more than once) because the government failed to prove that he had the requisite *mens rea* to be convicted on either charge. Second, Laiss contends that he is entitled to a new trial because the jury's verdict was against the weight of the evidence. Finally, Laiss asserts that a new trial is warranted because of the Court's response to the one question the jury asked during deliberations. None of these arguments has merit.

As explained below, Laiss has not come close to meeting his "very heavy burden" of proof with regard to his Rule 29 motion. *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997). Nor has Laiss demonstrated that "there is a serious danger that a miscarriage of justice has occurred," warranting a new trial under Rule 33. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). His motions, therefore, should be denied.

## I.      STATEMENT OF THE CASE

On September 5, 2025, the government unsealed a two-count indictment against Laiss, which charged him with one count of voter fraud, in violation of 52 U.S.C. § 20511(2) (Count One), and one count of voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e) (Count Two).

Count One alleged that on October 31, 2020, Laiss submitted a mail-in ballot for the 2020 Pennsylvania election when Laiss knew that he was no longer a Pennsylvania resident and was, therefore, ineligible to vote in Pennsylvania. More specifically, Count One alleged that in August 2020, Mr. Laiss moved his residence from Ottsville, Pennsylvania, to Frostproof, Florida, obtained a Florida driver's license, and registered to vote at his new Florida address. Despite this, Laiss completed a Pennsylvania mail-in ballot, which had been sent to his old Pennsylvania address, and mailed that ballot back to the Bucks County, Pennsylvania, Board of Elections, with the intent that his vote be counted in the Pennsylvania general election, which had candidates for federal office on the ballot.

Count One further alleged that before mailing his ballot back to Pennsylvania, Laiss enclosed his ballot in a special "secrecy envelope" and signed a declaration on the ballot's outer envelope, which stated:

> I hereby declare that I am qualified to vote from the below stated address at this election; that I have not already voted in this election; and I further declare that I marked my ballot in secret. I am qualified to vote the enclosed ballot. I understand I am no longer eligible to vote at my polling place after I return my voted ballot. However, if my ballot is not received by the county, I understand I may only vote by provisional ballot at my polling place, unless I surrender my balloting materials, to be voided, to the judge of elections at my polling place.

The "below stated address" was Laiss's former residence in Ottsville, Pennsylvania.

Count One further alleged that Laiss knew he was no longer qualified to vote in Pennsylvania because three days after mailing in his Pennsylvania ballot, Laiss went to a Florida polling location and voted in person in the Florida general election. The indictment alleged that Laiss specifically voted for individuals to serve in the offices of President and Vice President of the United States of America. By doing so, the indictment alleged, Laiss knowingly and willfully deprived, defrauded, and attempted to deprive and defraud the residents of Pennsylvania of a fair and impartially conducted election process.

Count Two alleged that Laiss knowingly and willfully cast more than one vote for the offices of President and Vice President in the 2020 general election. Specially, Count Two alleged that Laiss voted once for President and Vice President when he submitted his mail-in ballot to Pennsylvania election officials on October 31, 2020, and then voted for President and Vice President again when he showed up at the polls near Frostproof, Florida, on November 3, 2020, and voted there.

On September 5, 2025, Mr. Laiss appeared before the Honorable Carol Sandra Moore Wells, United States Magistrate Judge for the Eastern District of Pennsylvania and pleaded not guilty to both Count One and Count Two. He was released on a $10,000 bond.

On January 13, 2026, the Court held both a final pretrial conference and jury charge conference in advance of trial. ECF No. 48. Prior to that hearing, both parties had submitted proposed jury instructions. ECF No. 36 (government's proposed instructions); ECF No. 38 (defense's proposed instruction). Although there were some differences in the parties' requests, both the government and the defense agreed on the essential elements that the government would have to prove beyond a reasonable doubt to convict Laiss on Counts One and Two.

With regard to Count One, the parties agreed, with only slight differences in the wording, that the government would have to prove four essential elements beyond a reasonable doubt:

(1) That the defendant cast a ballot that was materially false, fictitious, or fraudulent under the laws of Pennsylvania;

(2) That that the defendant knew the ballot was materially false, fictitious, or fraudulent;

(3) That the ballot was cast in an election for federal office; and

(4) That defendant knowingly and willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process.

*Compare* ECF No. 36 (Gov't Request No. 23); *with* ECF No. 38 (Def. Request No. 1).

With regard to Count Two, the parties agreed, with some differences in the wording and order, that the government would have to prove three essential elements:

(1) That a candidate for federal office was on the ballot;

(2) That the defendant voted more than once for a candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, or Member of the United States House of Representatives; and

(3) That the defendant voted knowingly, willfully and expressly for the purpose of having the defendant's vote count more than once.

*Compare* ECF No. 36 (Gov't Request No. 28); *with* ECF No. 38 (Def. Request No. 6).

Laiss's trial began on March 2, 2026. The government presented only one witness, FBI Special Agent Carmen Dvorak de Morales ("Agent Dvorak"). The defense then presented testimony from nine character witnesses followed by Laiss himself.

After closing arguments, this Court instructed the jury on the law on March 3, 2026. With regard to Count One, this Court told the jury that the government had to prove the four elements listed above beyond a reasonable doubt. Tr. March 3, 2026, at 132. This Court then elaborated on each of the four elements. With regard to the first element, this Court stated, *inter alia*:

> Under Pennsylvania law, to be eligible to vote in an election, a person must be at least 18 years old, a United States Citizen for at least a month, a resident of Pennsylvania for at least 90 days immediately preceding the election, and a resident of the election district where he or she shall offer to vote for at least 30 days immediately preceding the election.

> If a person moves from Pennsylvania to another state with the intention of remaining there an indefinite time and making such state his place of residence, he shall be considered to have lost his residence in Pennsylvania, notwithstanding that he may entertain an intention to return at some indefinite future period.
>
> …
>
> A ballot is false or fraudulent under Pennsylvania law if a person has obtained or cast a ballot by falsely declaring that the person is a resident of the Pennsylvania voting district identified on the mail-in ballot envelope.

*Id.* at 133-34.

With regard to the fourth element, the Court stated that "the government must prove beyond a reasonable doubt that Mr. Laiss knowingly and willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process." *Id.* at 135. "The phrase, quote, deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process, unquote, means that the defendant acted in a manner intended to deceive or mislead election officials into accepting a ballot that the defendant knew to be defective under Pennsylvania law." *Id.* at 135-36.

The next morning, the jurors presented the Court with a question that read: "Even if the Gov. didn't prove Mr. Laiss had ill intent, is it enough that the act of fraud was committed to render a Guilty Verdict for Count 1? Element 4." Tr. March 4, 2026, at 3.[1]

The Court asked both parties for input on how to respond. *Id.* Government counsel stated that the jury's question was internally inconsistent because an "act of fraud" required "ill intent," so if the jury believed there was an "act of fraud," it necessarily had to believe there was some "ill intent," and conversely, if the jury believed there was no ill intent, it necessarily had to believe that no act of fraud had been committed. *Id.* at 3-4. Government counsel suggested the Court instruct the jury to review the existing instructions, consider all of them, and use them as a guide to reach a conclusion. *Id.* at 4. Defense counsel asked the Court to tell the jury that the answer to its question was "no." *Id.* Alternatively, the defense suggested that the Court re-instruct the jury on the fourth element of Count One. *Id.*

After considering these and other arguments from counsel, the Court instructed the jury as follows: "The answer is that you must look at the written legal jury instructions that I've given to you, and that is the correct statement on the law, and that is the answer to your question." *Id.* at 7. The jury then returned to its deliberations. *Id.*

A couple hours later, the jury returned a verdict and convicted Laiss on both counts.

---

[1] Most citations to the trial transcript will state "Tr." followed by the trial date and transcript page number. However, the court reporter prepared two different transcript segments for March 3, 2026: a "partial transcript" consisting of just Laiss's testimony and a "transcript" for the rest of the day's proceedings. To differentiate between the two transcripts, the government is citing to the partial transcript from March 3, 2026, as "Partial Tr. March 3, 2026," and the other transcript from March 3, 2026, as "Tr. March 3, 2026."

## II.     STANDARDS OF REVIEW

### A. __Rule 29__

Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders "a very heavy burden." *Anderson*, 108 F.3d at 481 (quoting *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995)). The court cannot substitute its judgment for that of the jury. Hence it must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor. *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001); *United States v. Scanzello*, 832 F.2d 18, 21 (3d Cir. 1987). Having done so, the Court must uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Accord, United States v. Caraballo–Rodriguez*, 726 F.3d 418, 430–31 (3d Cir. 2013) (*en banc*); *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008) (issue for trial or appellate court is "whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence"); *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002). "Courts must be ever vigilant in the context of Fed.R.Crim.P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citing *United States v. Jannotti*, 673 F.2d 578, 581 (3d Cir. 1982) (*en banc*).

### B. __Rule 33__

Rule 33 of the Federal Rules of Criminal Procedure provides that "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." When a court evaluates a challenge to the weight of the evidence under Rule 33, it does not view

the evidence in the light most favorable to the verdict winner, but instead exercises its own judgment in assessing the evidence. *Greenleaf v. Garlock, Inc*., 174 F.3d 352, 365 (3d Cir. 1999); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure 2806 (2d ed. 1995). However, as explained in *Johnson*, 302 F.3d at 150, a district court can "order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'" *Id.* (quotations and citations omitted). Thus, "[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases." *Government of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citations omitted). *See also United States v. Miller*, 987 F.2d 1462, 1466 (10th Cir. 1993).

## III.   DISCUSSION

### A.  Laiss's Rule 29 Motion Should be Denied

Laiss's motion for acquittal is based on an argument that the government failed to present the jury with sufficient evidence to prove that Laiss acted with the requisite *mens rea* to be convicted on either Count One or Count Two. Def.'s Mem. at 2. Specifically, with regard to Count One, Laiss asserts that the government failed to satisfy either the second or fourth element of that offense: namely, that Laiss knew that the ballot he mailed in to the Bucks County Board of Elections on October 31, 2020, was materially false, fictitious and fraudulent under Pennsylvania law (second element); and that Laiss knowingly and willingly deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process (fourth element). Mem. at 24-34. With regard to Count Two, Laiss contends that the government failed to prove the third element: i.e., that when Laiss voted twice

in the November 2020 presidential election, he did so "knowingly, willfully, and expressly for the purpose of having his vote count more than once." Mem. at 26, 34-37.

Notably, Laiss's counsel made the exact same assertions in her closing argument to the jury. Tr. March 3, 2026, at 85-111, and the jury rejected them. This Court should as well. Indeed, this Court "must uphold the jury's verdict if there is substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009) (citing *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008), and other authorities). Such evidence exists here.

Agent Dvorak's direct examination alone provided the jury with sufficient evidence to convict Laiss on both counts. *See generally* Tr. March 2, 2026, at 18-63. She presented the jury with all of the government's exhibits, including the secrecy envelope that contained the mail-in ballot that Laiss completed and transmitted to Bucks County election officials on October 31, 2020. *Id.* at 29-30 (referencing Exhibit 1). The envelope contained a declaration by Laiss that he was qualified to vote in the November 2020 Pennsylvania general election at his former address in Ottsville, Pennsylvania. *Id.* at 30-31. The address was handwritten, and it appeared to be signed by Laiss. *Id.* at 31-32.

Agent Dvorak also introduced the jury to several documents which showed that by October 31, 2020, Laiss had established residency in Florida, including by obtaining a Florida driver's license on August 11, 2020, *id.* at 43-44 (referencing Exhibit 7); registering to vote in Florida on the same day, *id.* at 44-48 (referencing Exhibits 8 and 10); acquiring Florida automobile insurance, *id.* at 45-46 (referencing Exhibit 9); and purchasing a home in Frostproof, Florida. *Id.* at 48-52 (referencing Exhibits 11 and 12).

Agent Dvorak told that jury that she and another FBI agent, Sean Ahearn, interviewed Laiss on September 17, 2020. *Id.* at 24-26, 52-63. Agent Dvorak testified that during this interview, Laiss acknowledged that he resided in Florida in the fall of 2020, when he mailed in the Pennsylvania ballot to Bucks County election officials and attested on the envelope that he was qualified to vote in Ottsville, Pennsylvania. *Id.* at 26. Agent Dvorak said Laiss also admitted that he had signed the declaration on the envelope, that he had included a Pennsylvania ballot in the envelope, and that he had voted for the office of President on the ballot. *Id.* at 53. Agent Dvorak also testified that Laiss admitted that three days after submitting the mail-in ballot to Pennsylvania, he went into a polling station in Polk County, Florida, signed a poll book there, and voted in person for the office of President. *Id.* at 53-54.

That portion of Agent Dvorak's testimony, by itself, was sufficient to convict Laiss of both charges. The Court correctly instructed the jury that under Pennsylvania law, a person who moves to another state and establishes residency in the other state, as Laiss did, loses the right to vote in Pennsylvania. Additionally, as the Court correctly instructed the jury, a "ballot is false or fraudulent under Pennsylvania law if a person has … cast a ballot by falsely declaring that the person is a resident of the Pennsylvania voting district identified on the mail-in ballot envelope." Tr. March 3, 2026, at 134. Thus, when Laiss cast a ballot in Pennsylvania on October 31, 2020, and declared that he was qualified to do so, he was casting a ballot that was materially false, fictitious, and fraudulent under Pennsylvania law. Laiss has even admitted this fact, which establishes the first element of Count One.

Oddly, Laiss claims that the government failed to prove that he <u>knew</u> his ballot was materially false, fictitious, or fraudulent, but any rational factfinder who listened to Dvorak's testimony and saw the documentary evidence of Laiss establishing a Florida residence, including

his Florida voter registration, could (and should) have concluded that Laiss <u>knew</u> that he had falsely declared on the envelope containing his mail-in ballot that he was a resident of the Pennsylvania voting district identified on the mail-in ballot envelope: i.e., Ottsville. That means Laiss <u>knew</u> he had cast a ballot that was materially false, fictitious, and fraudulent under Pennsylvania law.

Likewise, any rational factfinder considering Agent Dvorak's testimony, seeing the government's exhibits, and applying common sense could (and should) have inferred that when Laiss lied on his mail-in ballot envelope and said he lived in Ottsville, Pennsylvania, he was acting "in a manner intended to deceive or mislead election officials into accepting a ballot that the defendant knew to be defective under Pennsylvania law." As the Court properly instructed the jury, that would be sufficient evidence to prove the fourth element of Count One: i.e., that Laiss knowingly and willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process.

With regard to Count Two, any rational juror using common sense could (and should) have concluded that the reason why Laiss voted twice in the 2020 general election for President was because he wanted both of his votes to count, especially since the jurors knew that Laiss had registered to vote at 18 and had voted on 11 separate occasions prior to the fall of 2020. *Id.* at 37-42 (referencing Exhibits 4-6).

The jury also knew that Laiss had lied on his 2020 Pennsylvania ballot envelope, and they heard Agent Dvorak testify about how Laiss had changed his story with regard to when he mailed in his Pennsylvania ballot. More specifically, the jurors heard Agent Dvorak say that Laiss originally told her and Agent Ahearn that he had mailed in his ballot prior to moving to Florida in August 2000. *Id.* at 54. It was only after the agents confronted Laiss with the date on

his Pennsylvania mail-in ballot envelope – October 31, 2020 – that Laiss changed his story and acknowledged that he mailed in his Pennsylvania ballot more than two-and-a-half months after moving to Florida and registering to vote there. *Id.* A rational jury considering this evidence easily could (and should) have concluded that Laiss voted twice for President because he wanted both votes to count.

Notably, such inferences would have been reasonable even before the government played any of the recorded excerpts of the agents' interview of Laiss. But then the government played nine excerpts (Exhibits 13A through 13I), and the jurors were able to hear Laiss speak, so they could make assessments of Laiss's credibility. For example, the jurors heard Laiss admit that in the fall of 2020, when he sent his mail-in ballot to Pennsylvania, he was living in Frostproof, Florida. Tr. March 2, 2026, at 60-61 (referencing Exhibits 13B, 13C, and 13E). The jurors also heard Laiss admit that he didn't move back to Pennsylvania from Florida until early 2021, months after he had submitted his mail-in ballot to Pennsylvania. *Id.* at 61 (referencing Exhibit 13D).

The jurors also heard Laiss change his story about when he mailed in his Pennsylvania ballot. They heard Laiss initially say that he had both filled in his Pennsylvania ballot and mailed it in before he moved to Florida in August 2020, when he was still living in Pennsylvania. *Id.* at 61-62 (referencing Exhibits 13G-13I). And then the jurors heard Agent Dvorak confront Laiss with the fact that the date on the ballot's envelope was October 31, 2020, at which point Laiss had to acknowledge that he mailed the ballot after moving to Florida. *Id.* at 62 (referencing Exhibit 13I). A rational factfinder listening to such testimony could have concluded that the reason Laiss initially said he had mailed in the Pennsylvania ballot while he still lived in Pennsylvania was because he knew that it would have been legal for him to do so, whereas it was

illegal for him to vote in Pennsylvania after he had moved to Florida. To the extent the defense claims that Laiss had just made a mistake and was not trying to mislead the FBI agents, that was certainly a factual argument that the defense could have made and did make to the jury. But the jury decides matters of credibility, and the defense cannot ask this Court to usurp the jury's role in making such decisions.

The jury also heard Laiss admit that he had voted twice for the same candidate for President. *Id.* And while the jury also heard Laiss tell the FBI agents that he "didn't honestly think" his mail-in ballot would count, *id.*, the jury was not obligated to credit Laiss's explanation. Nor was the jury obligated to credit Laiss's claims to the FBI agents that "this wasn't something that I did intentionally," and that he "didn't do it to like defraud – like it wasn't an intentional act to like do anything wrong." *Id.* The jury is the ultimate arbiter of a witness's credibility, and a rational juror listening to the recording of Laiss's statements to the FBI reasonably could have concluded that Laiss was not credible. Such a rational factfinder could (and should) have concluded that the only reason why Laiss voted twice was because Laiss had the opportunity to vote twice so he took it because he wanted both of his votes for President to count: one in Pennsylvania and one in Florida.

In sum, the government presented more than enough evidence in its case-in-chief to support the jury's verdicts on both Count One and Count Two.

The defense case provided additional evidence to support Laiss' convictions. For example, several of Laiss's character witnesses testified that they had known Laiss for years and believed Laiss was a smart man. *See, e.g.,* Tr. March 3, 2026, at 26 (testimony of Luke Miorelli); *id.* at 29 (testimony of Joseph McCans); *id.* at 32 (testimony of Joseph Gartner); *id.* at 35 (testimony of Emily Laiss, the defendant's sister). A rational juror listening to such testimony

reasonably could have inferred that Laiss was intelligent enough to understand that ballots are secret in United States elections and that there was no way election officials from Pennsylvania and Florida could have identified which ballots Laiss had cast in each state and disqualified the ballot that should not have counted (i.e., the Pennsylvania ballot). Thus, a rational factfinder could have disbelieved Laiss's claim that when he voted twice, he expected that only one of his votes would count.

Perhaps most importantly, the jury heard directly from Laiss himself, so they had a full opportunity to assess Laiss's credibility when he testified that never intended to deceive Pennsylvania election officials and that although he voted twice for President, he "never intended for both votes to count" and "believed that it would be sorted out and that one vote would not count." Partial Tr. March 3, 2026, at 33-34. Laiss may be disappointed that the jury did not credit his testimony, but he cannot ask this Court to usurp the jury's role and find that he was telling the truth. *Brody*, 403 F.3d at 133.

Notably, the jury heard Laiss admit the following facts on cross-examination:

- He knew in October 2020 that it was illegal to vote twice in the same election. *Partial Tr.* March 3, 2026, at 35.

- He knew on October 31, 2020, that he did not live in Ottsville, Pennsylvania. *Id.*

- He signed the envelope containing a mail-in ballot that he submitted to Pennsylvania election officials in the 2020 general election. *Id.* at 36.

- He handwrote his former address in Ottsville, Pennsylvania, on the envelope. *Id.*

- Laiss's actual address at the time was in Frostproof, Florida. *Id.* at 37.

- He knew that his actual address was in Florida at the time he filled out his Pennsylvania ballot and envelope. *Id.*

- At the time he filled out the Pennsylvania ballot and envelope, Laiss was intending to vote in Florida three days later. *Id.*

- 14 -

- Laiss voted twice for President in the 2020 general election. *Id.*

- At the time he cast one vote for President and placed that vote in the mail-in ballot envelope for Pennsylvania, he was intending to vote for President three days later in person in Florida. *Id.* at 38.

- Laiss mailed his Pennsylvania ballot to election officials in Bucks County. *Id.*

- Laiss also voted for President and Vice President in person in Florida. *Id.* at 39.

- When Laiss mailed his Pennsylvania ballot to Bucks County, he was hoping that the people receiving the ballot would accept his ballot. *Id.* at 40.

- Laiss provided the Bucks County election officials who received his ballot with an address that he "knew was false as of October 31, 2020." *Id.* at 41.

- Laiss did this because he wanted the Bucks County election officials "to accept [his] ballot and count it, not just for President and Vice President, but for every candidate on the ballot and every question that [he] answered on the ballot." *Id.*

- When Laiss signed the poll book in Florida, he wanted the election officials in Florida to accept his votes in Florida. *Id.* at 41-42.

- Laiss had voted on 11 separate occasions prior to the fall of 2020. *Id.* at 42.

- Ten times he had voted in person, and one time, he had voted by mail. *Id.*

- He knew that all of his in-person votes had been by secret ballot. *Id.* at 42-43.

- For all of those in-person votes, Laiss knew that nobody would be able to figure out which votes he had cast. *Id* at 43.

- Laiss knew that it was the same general system when he voted in person in Florida in November 2020. *Id.*

- He knew that Florida vote would be by secret ballot. *Id.*

- Laiss is a college graduate who has been voting since he was 18 years old. *Id.* at 44.

- Laiss takes his voting very seriously. *Id.*

- He knew in 2020 that when he submitted ballots, they were submitted in secrecy. *Id.*

- After Laiss had voted twice in the 2020 general election, he took no steps to try to rectify the situation. *Id.* at 48.

- He never called anybody in Bucks County, Pennsylvania, and told them not to count his ballot because he had just voted in Florida. *Id.*

- Prior to the 2020 fall election, Laiss had never had an opportunity to vote twice in the same election. *Id.* at 50.

- After the 2020 fall election, Laiss never had another opportunity to vote twice in the same election. *Id*.

Collectively, these admissions constitute more than sufficient evidence to prove each element of Counts One and Two beyond a reasonable doubt.

More specifically, Laiss's admissions that he did not live in Ottsville, Pennsylvania, at the time he cast his Pennsylvania mail-in ballot and declared that he was a resident of Ottsville on the ballot envelope was an admission that he cast a materially false, fictitious, and fraudulent ballot under Pennsylvania law – i.e., an admission that proved the first element of Count One. Laiss's admissions that he <u>knew</u> he did not live in Ottsville and actually lived in Frostproof, Florida, at the time he cast his Pennsylvania ballot in an envelope on which he falsely declared that he did live in Ottsville, was an admission that he <u>knew</u> the ballot he cast was materially false, fictitious, and fraudulent under Pennsylvania law – i.e., an admission that proved the second element of Count One. Laiss's admission that he voted for President on his Pennsylvania ballot was an admission that there was a candidate for federal office on the ballot – i.e., an admission that proved the third element on the ballot.

And Laiss's admissions that when he mailed in Pennsylvania ballot to Bucks County election officials and provided them with a Pennsylvania address that he "knew was false as of

- 16 -

October 31, 2020," because he was hoping that the people receiving his ballot would accept it and count it, including his votes for President and Vice President, were admissions that he willfully deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process – i.e., admissions that proved the fourth element of Count One.

Similarly, Laiss's admissions that he voted twice for President, once in Pennsylvania and once in Florida, were admissions that candidates for federal office were on both ballots and that he cast more than one vote for President – i.e., admissions sufficient to prove the first two elements of Count Two. And Laiss's admissions that he wanted election officials in Bucks County, Pennsylvania, to accept and count his votes for President and Vice President, and that he wanted election officials in Florida to accept his votes in Florida, were admissions that he wanted both of his votes to count – i.e., admissions sufficient to prove the third element of Count Two.

To the extent that Laiss also denied having an intent to defraud the Bucks County election officials and having an intent to have both his votes for President be counted, such denials are irrelevant to a Rule 29 motion. The jury had an opportunity to weigh the credibility of Laiss's denials against his admissions and all of the other evidence of Laiss's *mens rea*. By convicting Laiss on both Count One and Count Two, the jury implicitly found that Laiss's denials were not credible. That determination was rational and should not be disturbed.

To the extent Laiss contends that the evidence of his guilt was not as compelling as the evidence of election fraud in other cases, *see* Mem. at 26-37 (citing a number of election crimes cases from other circuits and districts), his argument might be apt in a sentencing memorandum, but it is misplaced in the context of a Rule 29 motion. For present purposes, it does not matter whether this case involved "forged signatures, signing ballots for others without authorization, or

- 17 -

engaging in more widespread acts designed to give certain candidates or parties the edge in an election." *Id.* at 28 (citations omitted). All that matters for a Rule 29 motion is whether the government provided sufficient evidence to support the jury's verdicts, and the government easily met that burden here.

Put another way, Laiss has not met his "very heavy burden" of demonstrating that there was insufficient evidence to support his convictions on either Count One or Count Two. *Anderson*, 108 F.3d at 48. His motion for acquittal, pursuant to Fed. R. Crim. P. 29, should be denied.

**B. Laiss's Rule 33 Motion Should be Denied**

Laiss raises two arguments in support of his motion for a new trial, pursuant to Fed. R. Crim. P. 33. First, he claims that the verdict was against the weight of the evidence, so allowing the convictions to stand would constitute a miscarriage of justice. Mem. at 38-41. Next, Laiss contends that this Court erred in its response to the jury question during deliberations, so a new trial is warranted on Count One. Mem. at 41-44. Both arguments are baseless.

**1. The Jury's Verdict was not Against the Weight of the Evidence**

Laiss was convicted of voter fraud and voting more than once for the same federal office because he committed both crimes. The defense's contention that the government's trial presentation "conflated the *actus reus* and *mens rea* elements of the offenses," Mem. at 39, is a specious one. As explained in the previous section, the government presented the jury with overwhelming evidence that when Laiss falsely stated on his Pennsylvania mail-in ballot envelope that he lived in Ottsville and was eligible to vote in Ottsville, Laiss knew that he did not live in Ottsville anymore and was not eligible to vote there. Indeed, Laiss had registered to vote in Frostproof, Florida, which was where he resided, worked, and had a driver's license.

Laiss's <u>knowledge</u> that he did not live in Ottsville and was no longer eligible to vote there was all the *mens rea* required to satisfy the second element of Count One.

Moreover, even without Laiss's testimony, any rational factfinder would have inferred that the reason why Laiss mailed in the Pennsylvania ballot when he knew he did not live in Pennsylvania was because he was hoping to deceive the people receiving the ballot into believing that Laiss did still live in Pennsylvania so they would accept and count his ballot. But Laiss also admitted this fact during his testimony. Under the law, as properly instructed by this Court, that was an admission that Laiss intended to "deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process." In other words, Laiss admitted that he acted with the *mens rea* to satisfy the fourth element of Count One.

Similarly, even without Laiss's admissions on cross-examination, any rational factfinder would have inferred that the reason why Laiss cast two votes for President was because he wanted both votes to count. Again, however, Laiss admitted under oath that he wanted the Pennsylvania election officials to accept his Pennsylvania votes, and he wanted the Florida election officials to accept his Florida votes. He wanted both his votes for President to count. He admitted that he acted with sufficient *mens rea* to be convicted on Count Two.

Notwithstanding these admissions, Laiss now claims that it would be a miscarriage of justice to let his convictions stand because he also told the agents in 2024 and the jury at trial that he was not trying to defraud anyone and that he did not expect both of his votes for President to count. Laiss wanted both the agents and the jury to believe effectively that he was just confused – possibly because of COVID, going through a bad breakup, or some collection of reasons. But the jury understandably rejected Laiss's pleas of ignorance and innocence. The jurors saw that Laiss was a smart, sophisticated, and experienced voter, and they concluded that he had acted

- 19 -

with the necessary *mens rea* to be guilty of both Count One and Count Two. It would be a miscarriage of justice to overturn the jury's verdict, which it reached after several hours of clearly thoughtful deliberations.

**2.    The Court Properly Responded to the Jury's Question During Deliberations**

Laiss's final argument in his motion is that a new trial is warranted on Count One because the Court failed to adequately respond to the jury's question during deliberations. According to the defense, the Court should have simply answered "no" to the question: "Even if the Gov. didn't prove Mr. Laiss had ill intent, is it enough that the act of fraud was committed to render a Guilty Verdict for Count 1? Element 4." Mem. at 42.

Laiss claims that the "reasonable interpretation of the jury's question was that by 'fraud' they found that he used the wrong address on the mail-in ballot but do so without forming ill intent." Mem. at 42. That is a wholly speculative and baseless interpretation of the jury's question. A more reasonable inference is that at least one of the jurors did not understand that there cannot be "fraud" without "ill intent," perhaps because that juror (or those jurors) had not fully understood the instructions that the Court already had given. Under such circumstances, the Court correctly told the jurors to review the existing instructions because that was where the jurors could find the answers to their question.

Clearly, the Court's decision was wise, because the jurors did not come back with any more questions. Instead, they considered the existing instructions, applied them to the facts, and concluded that Laiss was guilty of both charges. No new trial is warranted here.

## IV.    CONCLUSION

For all the foregoing reasons, the government respectfully submits that this Court should deny the defendant's motions for acquittal and/or a new trial, pursuant to Fed. R. Crim. P. 29 and 33.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Mark B. Dubnoff*
MARK B. DUBNOFF
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by email and the

Court's ECF electronic court filing system upon:

Katrina Young, Esq., and
Elizabeth Toplin, Esq,
Counsel for the Defendant


/s/ Mark B. Dubnoff
MARK B. DUBNOFF
Assistant United States Attorney


Date: June 2, 2026.