# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-386** |
| **MATTHEW ALAN LAISS** | : | |

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

Defendant Matthew Alan Laiss knowingly and intentionally deceived Bucks County election officials into believing that he still lived in Ottsville, Pennsylvania, on October 31, 2020, so that they would accept his mail-in ballot, which included votes for President and Vice President. Mr. Laiss did so knowing that he was going to walk into a Florida polling station three days later and cast another vote for President and Vice President. Sure enough, on November 3, 2020, Mr. Laiss went into a church near his actual residence in Frostproof, Florida, swore an oath that he had not already voted in the 2020 general election, and voted a second time for the same candidates for President and Vice President.

Through his actions, therefore, Mr. Laiss committed the crimes of voter fraud, in violation of 52 U.S.C. § 20511(2) (Count One), and voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e) (Count Two). In this respect, Mr. Laiss's conduct was similar to that of Philip C. Pulley, another person who voted twice in the 2020 general election:

once in Pennsylvania and once in Florida. *See* Crim No. 24-288.[1] Unlike Mr. Pulley, however, Mr. Laiss has steadfastly refused to accept responsibility for his actions.

Instead, Mr. Laiss lied to the FBI agents who interviewed him in September 2024, claiming that he still lived in Pennsylvania when he mailed in his Pennsylvania ballot, and he lied on the witness stand at his trial, telling the jury that he had just made "an honest mistake" and that he "never intended for both votes to count." Partial Tr. March 3, 2026, at 33. Mr. Laiss falsely (and absurdly) testified that when he voted twice, he believed that "one vote would not count," *Id.* at 34, and he authorized his lawyers to blame his deception and double-voting on COVID-19, a bad breakup, and general homesickness.

If Mr. Laiss had followed Mr. Pulley's example, the government likely would be recommending that Mr. Laiss receive the same or similar sentence that Mr. Pulley received: a term of probation, a within-Guidelines fine, a community service obligation, and a statutory assessment. *See* Crim No. 24-288, ECF No. 20.[2] Mr. Laiss's additional misconduct, however, warrants additional punishment, which includes a term of imprisonment that would extend through the 2026 general election.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C.

---

[1] Mr. Pulley's crimes extended beyond the 2020 election, and he pleaded guilty to two counts of voter fraud, one count of voter registration fraud, and one count of voting more than once in a federal election.

[2] As a condition of his probation, Mr. Pulley was also required to write a letter to the Court explaining why he had committed his election crimes. ECF No. 26.

§ 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[3] At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.      BACKGROUND

On September 5, 2025, the government unsealed a two-count indictment against Mr. Laiss, which charged him with one count of voter fraud, in violation of 52 U.S.C. § 20511(2) (Count One), and one count of voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e) (Count Two). On September 5, 2025, Mr. Laiss appeared before the

---

[3] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

Honorable Carol Sandra Moore Wells, United States Magistrate Judge for the Eastern District of Pennsylvania and pleaded not guilty to both Count One and Count Two. He was released on a $10,000 bond.

Mr. Laiss's trial began on March 2, 2026. The government presented only one witness, FBI Special Agent Carmen Dvorak de Morales ("Agent Dvorak"). The defense then presented testimony from nine character witnesses followed by Mr. Laiss himself.

On March 4, 2026, the jury convicted Mr. Laiss on both Count One and Count Two.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence.

For Count One, charging voter fraud in violation of 52 U.S.C. § 20511(2), the defendant faces a maximum penalty of five years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment. For Count Two, which charges voting more than once in a federal election, in violation of 52 U.S.C. § 10307(e), the defendant also faces a maximum penalty of five years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.

### B.    Sentencing Guidelines Calculation.

The Probation Office has incorrectly calculated the defendant's advisory guideline range. As explained below, Mr. Laiss's total offense level should be 6 instead of 4 because there should be a two-level upward adjustment for obstruction of justice, pursuant to Section 3C1.1. of the United States Sentencing Guidelines. Either way, the defendant's imprisonment range under the Guidelines is 0 to 6 months.

The Presentence Investigation Report ("PSR") correctly states that Counts One and Two group together for guideline calculation purposes because they involve the same victim and the

same act or transaction.[4] PSR ¶ 26. The PSR also correctly states that Mr. Laiss's base offense level is 6, pursuant to U.S.S.G. § 2H2.1(a)(3)(C), because he voted more than once in a federal election. PSR ¶ 27.[5]

The Probation Office, however, does not believe a two-level upward adjustment for obstruction of justice should apply, pursuant to U.S.S.G. § 3C1.1, despite the fact that the jury convicted Mr. Laiss on both Counts One and Two after Mr. Laiss testified that he had just made an "honest mistake" and did not intend for both of his votes for President and Vice President to count. *See* PSR ¶¶ 17-23 and p.22. The government respectfully disagrees and renews its objections to Paragraphs 17-23, 31, 35, and 67 of the PSR.

Section 3C1.1 of the Guidelines states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

Application Note 1 to this provision states, in relevant part, that the adjustment applies "if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the

---

[4] The PSR identifies the transaction as the "second vote." PSR ¶ 26. If the "second vote" refers to the second vote that Laiss cast – i.e., the Florida vote -- the PSR would be incorrect, because Count One is based on the second vote received: i.e., the Pennsylvania vote. The government respectfully suggests that the PSR be amended so that the word "second" is replaced with "Pennsylvania" to remove any ambiguity.

[5] The base offense level also would be 6, under Section 2H2.1(a)(3)(B), because Laiss gave false information (the Ottsville address) to establish his eligibility to vote in Pennsylvania.

defendant's offense of conviction and any relevant conduct …" *Id.* cmt. n.1. Application Note 3, meanwhile, provides that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness," and "is not subject to precise definition." *Id.* cmt. n.3. It includes committing perjury. *Id.* cmt., n.4.

The Supreme Court has held that in determining what constitutes perjury under Section 3C1.1, courts should rely upon the definition that has gained general acceptance and common understanding under the federal criminal perjury statute, 18 U.S.C. § 1621. *United States v Dunnigan*, 507 U.S. 87, 94 (1993). "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* Although it is true that "not every accused who testifies at trial will incur an enhanced sentence under § 3C1.1 for committing perjury," *id. at* 95 (1993), *cited in* PSR at 22; *see also* U.S.S.G. § 3C1.1, cmt. n. 2, the examples in *Dunnigan* of instances in which the enhancement should not be applied are inapt in this case.

In *Dunnigan*, the Court noted that Section 3C1.1 would not require a two-level upward adjustment in a defendant's offense level where a defendant gives "inaccurate testimony due to confusion, mistake, or faulty memory." 507 U.S. at 95. "In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense." *Id.* "Her testimony

may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *Id.* None of those examples apply to Mr. Laiss's testimony.

As the Court properly instructed the jury, and as the defense repeatedly has emphasized – in counsel's opening statement and closing argument to the jury and the defendant's multiple motions for acquittal under Rule 29 and/or for a new trial under Rule 33 – the government had to prove beyond a reasonable doubt that Mr. Laiss acted with sufficient *mens rea* in order to convict Mr. Laiss on each count. More specifically, with regard to Count One, the government had to prove, *inter alia*, that Mr. Laiss "*knowingly* and *willfully* deprived, defrauded, or attempted to deprive or defraud the residents of Pennsylvania of a fair and impartially conducted election process." Similarly, with regard to Count Two, the government had to prove, *inter alia*, that Mr. Laiss "voted k*nowingly, willfully and expressly for the purpose* of having the defendant's vote count more than once."

Mr. Laiss expressly denied acting with any such scienter during his trial testimony. During his direct examination, Mr. Laiss had the following exchange with his counsel:

Q.      All right. Let's just be really clear. Did you intend for both votes to count?"

A.      No.

Q.      Okay. And did you tell the agents that it was an honest mistake?

A.      Yes.

Q.      Okay. And why did you tell them that?

A.      Because that was the truth. I never intended for both votes to count. I wanted one of my votes to count.

Q.      Okay. And did you intend to defraud the citizens of Pennsylvania?

A.      No.

                                        …

> Q.    When you mailed your ballot in Pennsylvania on October 31st, and then you went in person in Florida and cast your ballot, what, if anything, did you think would happen after you cast two votes?
>
> A.    I believed that it would be sorted out and that one vote would not count.

Partial Tr. at 33-34.

None of this testimony was "due to confusion, mistake, or faulty memory." *See Dunnigan*, 507 U.S. at 95. Nor did any of this testimony have to do with "matters such as lack of capacity, insanity, duress, or self-defense." *See id.* These were clear and express denials by Mr. Laiss of the *mens rea* necessary to be convicted of either Count One and Count Two. The jury rejected those denials and convicted Mr. Laiss on both charges. Implicit in the jury's verdict were findings *beyond a reasonable doubt* that Mr. Laiss had committed perjury when he testified that he did not intend both of his votes for President and Vice President to count; that he had just made an "honest mistake;" and that he did not intend to defraud the citizens of Pennsylvania.

Although this Court must still make independent findings that Mr. Laiss obstructed justice, *Dunnigan*, 507 U.S. at 95, and the findings must be supported by evidence other than the jury's having disbelieved the defendant, *United States v. Miller*, 527 F.3d 54, 76 (3d Cir. 2008), this Court should apply a preponderance of evidence standard of proof when conducting this analysis. *United States v. Raia*, 993 F.3d 185, 193 (3d Cir. 2021); *United States v. Barry*, 534 Fed. App. 138, 145 (3d Cir. 2013) (unpublished). In this case, the preponderance of the evidence demonstrated that Mr. Laiss gave "false testimony concerning a material matter with the willful intent to provide false testimony," *Dunnigan*, 507 U.S. at 94, when he told the jury that he had just made an honest mistake when voting twice, that he did not really intend for both of his votes

for President to count, and that he when he lied to Bucks County election officials about his residence, he was not trying to deceive them into accepting his ballot.

Indeed, Mr. Laiss admitted on cross-examination that when he mailed in his Pennsylvania ballot, which included votes for President and Vice President, he was intending to vote for President three days later in person in Florida. *Id.* at 38. That was an admission that Mr. Laiss had committed perjury when he had testified on direct examination that he had just made an "honest mistake." Similarly, Mr. Laiss admitted on cross-examination that when he mailed in his Pennsylvania ballot with what he knew was a false address, he wanted the Bucks County election officials "to accept [his] ballot and count it, not just for President and Vice President, but for every candidate on the ballot and every question that [he] answered on the ballot." Partial Tr. at 41. That was an admission that Mr. Laiss committed perjury when he had testified on direct examination that he was not trying to defraud the citizens of Pennsylvania. Likewise, when Mr. Laiss admitted on cross-examination that when he signed the poll book in Florida, he wanted the election officials in Florida to accept his votes in Florida, *id.* at 41-42, that was an admission that Mr. Laiss had committed perjury on direct examination when he testified that did not intend for both of his votes to count.

Lastly, Mr. Laiss's absurd testimony that he voted twice because he wanted exactly one of his votes for president to count was not "due to confusion, mistake, or faulty memory." It was just a lie. Accordingly, the obstruction of justice enhancement under Section 3C1.1 should apply. The defendant's adjusted offense level should be 8 instead of 6, and after a 2-level downward

adjustment because Mr. Laiss has zero criminal history points, Mr. Laiss's total offense level should be 6. Mr. Laiss is in criminal history category I.

With a total offense level of 6 and a criminal history of I, Mr. Laiss's sentencing range under the Guidelines would be 0-6 months' imprisonment, a 3-year period of supervised release, a fine of $1,000 to $9,500, and a $200 statutory assessment.

### III.    ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.    **Consideration of the 3553(a) Factors Regarding Imprisonment.**

Sections 3553(a)(4) and (a)(5) specifically direct the Court to consider the applicable guidelines and commentary, so they counsel for the imposition of a within-Guidelines sentence of 0-6 months' imprisonment.

At the same time, however, Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing among similarly situated defendants. A logical corollary is that a Court should also strive to avoid similarity among disparately situated defendants. In this case, that means imposing a more severe sentence for Mr. Laiss than the one imposed in 2025 for Philip Pulley because Mr. Laiss, unlike Mr. Pulley, has never accepted responsibility for his election crimes. To the contrary, Mr. Laiss has committed at least two, as-yet uncharged federal crimes *after* his underlying election crimes. Mr. Laiss lied to FBI agents – an action that could give rise to a prosecution under 18 U.S.C. § 1001 -- when he told them that he mailed in his Pennsylvania ballot "well before" he moved to Florida in August 2020. *See* Trial Exhibit 13G. And Mr. Laiss repeatedly committed perjury at his trial – with each separate lie potentially chargeable under 18 U.S.C. § 1621 – when he took the witness stand and denied having any intend to defraud the Bucks County election officials or to cast two votes for President and Vice President.

If Mr. Laiss had accepted responsibility for his crimes, his offense level would have been 2, which was Mr. Pulley's offense level, and the government likely would have recommended a nearly identical sentence to the sentence that Mr. Pulley received: three years' probation, which included a condition that Pulley write a letter to the Court explaining why he tried to vote more

than once, a $9,500 fine, and a $400 special assessment. Mr. Laiss's offense level is either 6, if the obstruction enhancement under Section 3C1.1 applies, or 4, if the enhancement does not apply. Either way, Mr. Laiss's offense level is higher than Mr. Pulley's and his criminal conduct continued longer than Mr. Pulley's conduct did. Accordingly, Mr. Laiss's sentence should be more severe than Mr. Pulley's sentence.

The government respectfully submits that a sentence of 3-6 months' imprisonment, which is in the upper half of Mr. Laiss's guideline range, would be appropriate here. Such a sentence, if commenced shortly, would ensure that Mr. Laiss would be unable to vote in the 2026 general election because incarcerated felons are ineligible to vote in Pennsylvania. Thus, one of the consequences of Mr. Laiss defrauding the citizens of Pennsylvania in the 2020 general election and voting twice in that election would be that Mr. Laiss would not be able to vote at all in the 2026 general election. That is the very definition of "just punishment." 18 U.S.C. § 3553(a)(2)(A).

A sentence of 3-6 months' imprisonment would also be appropriate given the nature of Mr. Laiss's offenses. The right to vote for one's national leaders is a privilege, and people like Mr. Laiss who abuse their privilege by committing voter fraud and voting more than once in the same federal election demonstrate both a stunning arrogance and a callous disregard for the rights of their fellow citizens. Attempting to vote multiple times in the same election also undermines public confidence in the legitimacy of American elections. Crimes like Mr. Laiss's cause some people to think that American elections cannot be free and fair.

A sentence of 3-6 months' imprisonment would reflect the seriousness of Mr. Laiss's crimes and promote respect for the law by sending a message to everyone who followed this case that a person who tries to vote illegally will be held accountable for his or her actions. Such a

sentence will also serve the sentencing goal of general deterrence, especially given the media attention this case has generated.

The sentencing goals of specific deterrence, protecting the public from the defendant, and the history and characteristics of the defendant are less relevant here, except insomuch as they counsel against an upward variance from Mr. Laiss's guidelines range of imprisonment.

The sentencing goal of providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, id. § 3553(a)(2)(D), is not applicable in this case.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a 3-month to 6-month sentence. The government also asks the Court to impose a within-guidelines fine of $1,000.

### B.    Supervised Release.

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception

- 13 -

of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a 3-year term of supervised release is appropriate on Counts One and Two because it advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), and protect the public, § 3553(a)(2)(C).

The government respectfully submits that a condition of supervised release should include an obligation to perform 100 hours of community service, preferably through work for a voting rights organization.

## IV.    CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Mark B. Dubnoff*
MARK B. DUBNOFF
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Katrina Young, Esq., counsel for the defendant.

/s Mark B. Dubnoff
MARK B. DUBNOFF
Assistant United States Attorney

DATED: July 8, 2026.